## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 15-cv-00622-REB-STV

GREG NORWOOD, on behalf of himself and all similarly situated persons,

     Plaintiff,

v.

WBS, INC., a Texas corporation, d/b/a W-B Supply Co., Inc.,

     Defendant.

_____

### RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE
_____

Magistrate Judge Scott T. Varholak

     This matter comes before the Court on Plaintiff's Motion for Partial Summary Judgment [#55] (the "Motion").  This Court has carefully considered the Motion and related briefing, the entire case file, arguments made by counsel during the October 12, 2016 motion hearing, and the applicable case law.  For the following reasons, I respectfully RECOMMEND that Plaintiff's Motion be GRANTED.

## I.    BACKGROUND

     This case requires the Court to resolve the question of when a claim for unpaid overtime pay under the Colorado Wage Claim Act, COLO. REV. STAT. § 8-4-101, *et seq.* (the "CWCA"), made by a terminated employee, accrues for statute of limitations purposes.  Plaintiff contends that the statute of limitations period begins to run when the employee is terminated.  Defendant, on the other hand, argues that the statute of limitations period begins when the overtime pay was due and not paid at the regular pay period interval.  For the reasons set forth below, this Court agrees with Plaintiff that

1

claims made pursuant to Section 109 of the CWCA accrue when the employee is terminated.

## II.    FACTUAL ALLEGATIONS

The undisputed facts are as follows.  Plaintiff was employed by Defendant for approximately 13 years, from September 2001 through January 2015.  [#55, Undisputed Fact ("UF") 2; #61, UF2].  During his employment, Plaintiff did not receive compensation for overtime pay, though Defendant disputes that Plaintiff actually ever worked more than 40 hours per week.  [#55, UF3; #61, UF3].  Plaintiff is not exempt from the Colorado Wage Order or the Fair Labor Standards Act ("FLSA").  [#55, UF4; #61, UF4]. While not specifically set forth in the Undisputed Facts sections of the briefs, the parties' briefs do not appear to dispute that Plaintiff was terminated from his employment.

## III.   STANDARD OF REVIEW

Summary judgment is appropriate only if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986); *Henderson v. Inter–Chem Coal Co.,* 41 F.3d 567, 569 (10th Cir. 1994).  "[A] 'judge's function' at summary judgment is not 'to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.'" *Tolan v. Cotton*, 134 S. Ct. 1861, 1866 (2014) (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249 (1986)).  Whether there is a genuine dispute as to a material fact depends upon whether the evidence presents a sufficient disagreement to require submission to a jury.  *See Anderson,* 477 U.S. at 248–49; *Stone v. Autoliv ASP, Inc.,* 210 F.3d 1132, 1136 (10th Cir. 2000); *Carey v. U.S. Postal Serv.,* 812 F.2d 621, 623 (10th Cir. 1987).

A fact is "material" if it pertains to an element of a claim or defense; a factual dispute is "genuine" if the evidence is so contradictory that if the matter went to trial, a reasonable party could return a verdict for either party. *Anderson,* 477 U.S. at 248.   "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (*citing First Na'l. Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968)).   In reviewing a motion for summary judgment the Court views all evidence in the light most favorable to the non-moving party. *See Garrett v. Hewlett-Packard Co.,* 305 F.3d 1210, 1213 (10th Cir. 2002).

"Statutory interpretation is a matter of law appropriate for resolution on summary judgment."   *Thomas v. Metropolitan Life Ins. Co.*, 631 F.3d 1153, 1160 (10th Cir. 2011); *see also United States v. Cemex, Inc.*, 864 F.Supp.2d 1040, 1043 (D. Colo. 2012); *Bayles v. Am. Med. Response of Colo., Inc.*, 937 F. Supp. 1477, 1482 (D. Colo. 1996). Because the parties seek an interpretation of the CWCA, the matter is appropriate for summary judgment resolution.

## IV.   ANALYSIS

Statutory interpretation involves a question of law.   *See Klinger v. Adams Cty. Sch. Dist. No. 50*, 130 P.3d 1027, 1031 (Colo. 2006).  Because the Court is interpreting a Colorado statute, the Court's task is to give effect to the intent of the Colorado General Assembly.   *Id.*   The Court must "read words and phrases in context."   *Id.* "Where the language is clear and unambiguous, [the Court] do[es] not resort to other rules of statutory construction."   *Id.*  But, "where the language is ambiguous [the Court]

3

rel[ies] on other factors such as legislative history, the consequences of a given construction, and the end to be achieved by the statute." *Id.*

In interpreting a statute, "[i]t is presumed that the General Assembly intended that the entire statute be effective and that the result be just and reasonable." *Martinez v. Badis*, 842 P.2d 245, 249 (Colo. 1992). As a result, "a statute must be construed as a whole, and courts must endeavor to give reasonable meaning to all provisions of a statute." *Id.* With these principles in mind, the Court will turn to the provisions of the CWCA applicable here.

### A. The statutory framework

"The purpose of the CWCA is to assure the timely payment of wages and provide adequate judicial relief when wages are not paid, and it should be liberally construed to carry out its purpose." *Montemayor v. Jacor Communications, Inc.*, 64 P.3d 916, 923 (Colo. App. 2002). Consistent with this purpose, Section 103 of the CWCA sets forth a mechanism to require employers to timely make wage payments to current employees. This Section provides, in part:

> All wages or compensation, other than those mentioned in section 8-4-109, earned by any employee in any employment [excluding deferred compensation programs], shall be due and payable for regular pay periods of no greater duration than one calendar month or thirty days, whichever is longer, and on regular paydays no later than ten days following the close of each pay period unless the employer and the employee shall mutually agree on any other alternative period of wage and salary payments.

COLO. REV. STAT. § 8-4-103(1)(a).

Section 109 of the CWCA, on the other hand, governs payments to terminated employees. This Section provides, in part: "When an interruption in the employer-employee relationship by volition of the employer occurs, the wages or compensation

4

for labor or service earned, vested, determinable, and unpaid at the time of such discharge is due and payable immediately." COLO. REV. STAT. § 8-4-109.  Thus, just as Section 103 requires timely payments to current employees (through the payment of wages at regular intervals), Section 109 requires timely payments to terminated employees (through immediate payment).

Employers who fail to make timely payments face liability.  Section 110 of the CWCA provides that "[a]ny person claiming to be aggrieved by violation of any provisions of this article or regulations prescribed pursuant to this article may file suit in any court having jurisdiction over the parties without regard to exhaustion of any administrative remedies." COLO. REV. STAT. § 8-4-110(2).  An employer who violates Section 109 with respect to a terminated employee may also be liable to that employee for penalties.  *See id.* § 8-4-109(3)(b).  Section 103, on the other hand, does not contain a similar penalty provision.  *See id.* § 8-4-103.

The statute of limitations for bringing a CWCA claim is set forth in Section 122 of the Act.  That Section provides:

> All actions brought pursuant to this article shall be commenced within two years after the cause of action accrues and not after that time; except that all actions brought for a willful violation of this article shall be commenced within three years after the cause of action accrues and not after that time.

*Id.* § 8-4-122.  As stated earlier, the question this case presents is: when does a terminated employee's CWCA claim for unpaid overtime pay accrue for statute of limitations purposes?

## B.  The plain language of Section 109

Plaintiff argues that the answer to this question is governed by the plain language of Section 109, and this Court agrees.  Section 109 plainly states that "wages or

compensation for labor or service earned, vested, determinable, and unpaid **at the time of such discharge** is due and payable immediately." COLO. REV. STAT. § 8-4-109(1)(a) (emphasis added). By the plain language of this statute, an employee does not have a Section 109 claim until the employee is discharged. As a result, the employee's Section 109 claim cannot accrue until that date of discharge. Pursuant to Section 122, the employee has two years from that date to bring a cause of action for non-willful violations, three years from that date for willful violations. *Id.* § 8-4-122.

More than two decades ago, the Court in *Farris v. ITT Cannon*, 834 F. Supp. 1260, 1265-66 (D. Colo. 1993), reached this same conclusion. In the 23 years since *Farris*, the General Assembly has not amended the CWCA to account for the *Farris* decision.[1] The fact that the General Assembly has not amended the relevant portions of the CWCA since *Farris*, despite making other amendments to the statute, supports the conclusion that the General Assembly acquiesces in the *Farris* Court's conclusion. *See City of Colorado Springs v. Powell*, 156 P.3d 461, 467 (Colo. 2007).

---

[1] In *Farley v. Family Dollar Stores, Inc.*, No. 12-cv-00325-RBJ-MJW, 2013 WL 500446, at *2 (D. Colo. Feb. 11, 2013), the Court concluded that *Farris* lacked precedential value because the statute had been amended. As both parties agree, however, the relevant provisions of the CWCA have been moved and renumbered, but not materially amended. [#82, p. 2; #83, p. 3]. The relevant clause of Section 109(1)(a) has only been amended to require that the wages earned also be "vested" and "determinable." C*ompare* COLO. REV. STAT. § 8-4-109(1)(a) (2015) *with id.* § 8-4-14(1) (1993). Sections 103(1)(a), 110(2) and 122 have all been renumbered, but remain unchanged. C*ompare id.* § 8-4-103(1)(a) (2015); *id.* § 8-4-110(2) (2015); *id.* § 8-4-122 (2015) *with id.* § 8-4-105(1) (1993); *id.* § 8-4-123 (1993); *id.* § 8-4-126 (1993). Thus, while the provisions relied upon by the *Farris* Court have been reorganized and renumbered, they have not materially changed. As a result, *Farris* remains persuasive and, indeed, has been followed by at least one Colorado court even following the *Farley* opinion. *See* #64-1, attaching without objection *Miller v. Yotes, Inc.*, 12CV4044, at p. 3-4 (Denver Dist. Ct. Apr. 3, 2014).

### C.  Section 103 does not change the analysis

Relying upon Section 103, Defendant argues that Plaintiff's claims for overtime wages accrued years ago, and are therefore time-barred.  Section 103(1)(a) provides that an employer must make timely payments of all wages or compensation.  COLO. REV. STAT. § 103(1)(a).  Section 110(2), in turn, authorizes a Plaintiff to bring suit for an employer's failure to make such payments.  *Id.* § 110(2).  Thus, according to Defendant, Plaintiff's claims for non-payment of overtime wages accrued when Defendant failed to make such payments pursuant to Section 103.[2]

The problem with Defendant's argument is that Sections 103 and 109 contain two distinct avenues of recovery.  The Colorado Court of Appeals has made clear that these "two sections are mutually exclusive."  *Hofer v. Polly Little Realtors*, 543 P.2d 114, 116 (Colo. App. 1975).  Section 109 provides the means to recover unpaid wages at the time of discharge caused by the employer, whereas Section 103 provides the means to recover unpaid wages "where the employer-employee relationship survives."  *Id.*  While Plaintiff's claims for a Section 103 violation accrued the day wages were not timely paid, his Section 109 claims did not accrue until he was terminated.

This conclusion is bolstered by the differing remedies available for these two sections of the statute.  As explained earlier, Section 109 contains a penalty provision not contained within Section 103.  *Compare* COLO. REV. STAT. § 8-4-109(3)(b) *with id.* § 8-4-103.  The fact that each section has a differing remedy supports the conclusion that the claims are distinct.  Thus, the fact that Plaintiff may have been able to bring a

---

[2] Defendant disputes that any payment for overtime was ever owed.  But, to the extent it was, Defendant argues that Plaintiff's claims for any unpaid overtime accrued at the time such payments were due pursuant to Section 103.

Section 103 claim earlier does not limit his ability to bring a Section 109 claim upon termination from employment.

Defendant argues that such an approach allows for multiple accruals. This is true, but is consistent with the separate nature of Sections 103 and 109 and the fact that these two sections provide distinct avenues for recovery. An employee's claim for unpaid overtime wages accrues under Section 103 when he is not paid such wages at the regular interval, then accrues again under Section 109 when the employee is terminated. Such a reading stays true to the requirement that the CWCA be "liberally construed to carry out its purpose." *Montemayor*, 64 P.3d at 923.[3]

### D. The "wages or compensation" available in a Section 109 claim include all unpaid wages "earned, vested, determinable, and unpaid" during the entire course of the employment

As a subset of its Section 103 argument, Defendant argues that the phrase "the wages" in Section 109 does not refer to all wages, but only "earned wages *other than those* payable at regular pay periods under section 103." [#82, p. 8 (emphasis in original)]. Defendant argues that the wages referred to in Section 109 include those wages earned between the employee's previous paycheck and the employee's termination, as well as accrued but unused vacation time or commissions that had become earned and vested. [#82, pp. 8-9]. Thus, Defendant argues that a claim for these limited wages accrues at the time of termination, whereas a claim for all other wages earned during the course of employment accrues at the time of non-payment following the regular pay period.

---

[3] Nothing in *Olsen v. Bondurant and Co.*, 759 P.2d 861, 864 (Colo. App. 1988) (finding that claim for unpaid bonus accrued when bonus because due and payable), or *Jones v. Cox*, 828 P.2d 218, 224 (Colo. 1992) (finding that personal injury claim accrued "when a suit may be maintained thereon"), suggest, let alone compel, a contrary result.

Once again, however, Defendant's argument is undercut by the plain language of the statute.  Section 109 contains no such limitation.  Rather, the only limitation that Section 109 provides is that the wages must be "earned, vested, determinable, and unpaid."  COLO. REV. STAT. § 8-4-109(1)(a).

Moreover, Section 101 of the statute broadly defines "wages" to include "**[a]ll** amounts for labor or service performed by employees [provided] such amount is earned, vested, and determinable, at which time such amount shall be payable to the employee pursuant to this article."  *Id.* § 101(14)(a)(I) (emphasis added).  Defendant's attempt to limit Section 109's use of the term "wages" is inconsistent with the clear definition of that term set forth in Section 101.

### E.  Employers remain protected by Section 109's "determinable" requirement

Finally, Defendant argues that the CWCA's recordkeeping requirements demonstrate that any claims for unpaid overtime wages accrue when the payment is not timely made (pursuant to Section 103), and that there is not a separate accrual period when the employee is terminated (pursuant to Section 109).  Section 103(4.5) of the CWCA requires employers to maintain employment records about wages paid for "three years after the wages or compensation were due."  COLO. REV. STAT. § 8-4-103(4.5).  Defendant argues that this provision "indicates that the General Assembly contemplates that no claim could be brought by an employee more than three years after such itemized pay statements were issued."  [#61, p. 5].  Indeed, Defendant argues that, because these records may no longer exist and memories may fade, it would be unjust to allow a Section 109 claim for any overtime amounts more than three years old.  [*Id.*].

While the Court appreciates Defendant's concerns, those concerns do not change the plain language of the statute detailed above.  Moreover, those concerns are mitigated by Section 109's requirement that the wages be "determinable" at the time of discharge.  The "determinable" requirement was added in 2003, s*ee* 2003 Colo. Legis. Serv. Ch. 286 (H.B. 03-1206) (West), and it protects employers from claims for wages that cannot be ascertained.  As a result, if there is insufficient evidence to prove "determinable" unpaid overtime wages at the time of Plaintiff's termination, Defendant will not be responsible for those wages.

## III.    Conclusion

For the foregoing reasons, this Court respectfully **RECOMMENDS** that:

(1)    Plaintiff's Motion for Partial Summary Judgment [#55] be **GRANTED**. [4]

DATED:  November 14, 2016                    BY THE COURT:

s/Scott T. Varholak
United States Magistrate Judge

---

[4] Within fourteen days after service of a copy of this Recommendation, any party may serve and file written objections to the Magistrate Judge's proposed findings and recommendations with the Clerk of the United States District Court for the District of Colorado. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *Griego v. Padilla (In re Griego)*, 64 F.3d 580, 583 (10th Cir. 1995).  A general objection that does not put the District Court on notice of the basis for the objection will not preserve the objection for *de novo* review.  "[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for *de novo* review by the district court or for appellate review."  *United States v. 2121 East 30th Street*, 73 F.3d 1057, 1060 (10th Cir. 1996).  Failure to make timely objections may bar *de novo* review by the District Judge of the Magistrate Judge's proposed findings and recommendations and will result in a waiver of the right to appeal from a judgment of the district court based on the proposed findings and recommendations of the magistrate judge. *See Vega v. Suthers*, 195 F.3d 573, 579-80 (10th Cir. 1999) (holding that district court's decision to review magistrate judge's recommendation *de novo* despite lack of an objection does not preclude application of "firm waiver rule"); *Int'l Surplus Lines Ins. Co. v. Wyoming Coal Refining Sys., Inc.*, 52 F.3d 901, 904 (10th Cir. 1995) (finding that cross-claimant waived right to appeal certain portions of magistrate judge's order by failing to object to those portions); *Ayala v. United States*, 980 F.2d 1342, 1352 (10th Cir. 1992) (finding that plaintiffs waived their right to appeal the Magistrate Judge's ruling by failing to file objections). *But see, Morales-Fernandez v. INS*, 418 F.3d 1116, 1122 (10th Cir. 2005) (holding that firm waiver rule does not apply when the interests of justice require review).